**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**July 27, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP1265**

Cir. Ct. No.  **2017CV189**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT III**

JEROD C. HANSEN AND CATHERINE TABOR-HANSEN,

    PLAINTIFFS-APPELLANTS,

  V.

MARK A. KLEIN, DECEASED, LISA A. KLEIN, WENDELL P. KLEIN,
ANNA M. KLEIN AND CARLTON J. KLEIN,

    DEFENDANTS-RESPONDENTS,

ABC INSURANCE COMPANY, DEF INSURANCE COMPANY AND GHI
INSURANCE COMPANY,

    DEFENDANTS.

      APPEAL from a judgment of the circuit court for Trempealeau County:  RIAN RADTKE, Judge.  *Affirmed*.

      Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jerod Hansen and Catherine Tabor-Hansen (collectively, "the Hansens") appeal from the circuit court's grant of a summary judgment in favor of Wendell, Anna and Carlton Klein (collectively, "the Kleins"), dismissing the Kleins from this suit. The Hansens argue that disputed issues of material fact remain as to whether the Kleins engaged in a civil conspiracy with their neighboring relatives, who sold real property to the Hansens, to suppress and conceal the existence of adverse conditions affecting the property during the time that the Hansens rented the property and prior to their purchase of it. We conclude the Hansens failed to provide sufficient evidence, under the applicable legal standard, to support their civil conspiracy claim, and, thus, no genuine issues of material fact preclude summary judgment on that claim. Accordingly, we affirm.

## BACKGROUND

¶2 The Kleins live on a roughly 500-acre farm in Trempealeau County. The Kleins have worked on the farm their entire lives, growing cash crops to sell locally. From 1962 to 2017, they have seasonally used propane cannons, referred to as "scare guns," to scare away birds and to keep them from destroying their crops. In 2013, the County enacted an ordinance requiring any person wishing to operate a scare gun within the County to obtain a permit. The Kleins obtained a permit for the 2015 season, but they were cited multiple times for ordinance violations until they stopped using the scare guns sometime in 2017.

¶3      Mark Klein,[1] the brother of Carlton and Wendell, owned real property near the Kleins' farm along with his wife, Lisa. Mark and Lisa moved to Minnesota in 2012. From time to time, even after the move, Mark hunted on the Kleins' farm, and Wendell and Carlton rented land from Mark.

¶4      Around June of 2015, the Hansens first rented Mark and Lisa's residence, and they then entered into a written agreement to purchase it. Mark and Lisa provided the Hansens with a real estate condition report specifically indicating that there were no adverse conditions affecting the property that they were required to disclose. As relevant here, Mark and Lisa did not disclose the Kleins' use of scare guns on the adjacent property.

¶5      The Hansens eventually commenced an action against Mark and Lisa alleging claims against them for negligent misrepresentation, intentional deceit, fraudulent advertising, and breach of express warranty, all arising from their failure to disclose the Kleins' use of scare guns. In addition, the Hansens alleged a claim for civil conspiracy against Mark, Lisa, and the Kleins. Specifically, the Hansens alleged that Mark and Lisa conspired with the Kleins to suppress and conceal the excessive use of scare guns on the farm during the time that the Hansens rented the property and prior to their closing on the real estate.[2] The Hansens claimed that they were unaware of any defects in the property at the time of its purchase, that the use of the scare guns constituted a defect in Mark and

_____

[1] Mark Klein passed away after the commencement of this action.

[2] The Hansens also alleged that the Klein brothers individually, or as part of a conspiracy, engaged in a pattern of continual threatening and intimidating behavior and/or deception toward the Hansens so as to dissuade them from enforcing their rights and testifying in this case. While this allegation is briefly mentioned in the Hansens' appellate briefs, it does not appear to be material to the present appeal, and we will not address it further.

Lisa's property that Mark and Lisa were required to disclose,[3] and that the Hansens have been damaged by the use of the scare guns.

¶6      The Kleins filed a motion for summary judgment, arguing there was insufficient evidence to support the Hansens' claims against them. The Hansens filed various affidavits in opposition to the Kleins' motion. These included one from the Hansens' current—and Mark and Lisa's former—neighbor, Robert Bork. Robert averred, among other things, that: (1) during the time Mark and Lisa's property was for sale, the Kleins reduced the firing of the scare guns, including silencing them when the property was shown to prospective buyers; and (2) his wife, Pat, had a discussion with an unidentified prospective buyer, as well as with the realtor, about the buyer's unawareness of the Kleins' use of the scare guns. The Hansens did not submit an affidavit from Pat Bork.

¶7      The circuit court granted the Kleins' summary judgment motion and dismissed the claims against them with prejudice, concluding there was insufficient evidence to support the Hansens' civil conspiracy claim. The Hansens now appeal.

## DISCUSSION

¶8      We review a summary judgment decision de novo, using the same methodology as the circuit court. *Water Well Sols. Serv. Grp. v. Consolidated Ins. Co.*, 2016 WI 54, ¶11, 369 Wis. 2d 607, 881 N.W.2d 285. Summary judgment is appropriate if there is no genuine issue as to any material fact and the

---

[3] In particular, the Hansens assert that "defects" requiring disclosure include environmental nuisances affecting the property, which they claim include noise coming from neighboring properties.

moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2019-20).[4] For a party against whom a claim has been made to make a prima facie case for summary judgment, it must show a defense which would defeat the claim. *Preloznik v. City of Madison*, 113 Wis. 2d 112, 116, 334 N.W.2d 580 (Ct. App. 1983). If such a showing has been made, we examine the affidavits submitted by the opposing party to determine whether a genuine issue exists as to any material fact. *Id.* In evaluating the evidence, we draw all reasonable inferences from the evidence in the light most favorable to the nonmoving party. *Burbank Grease Servs., LLC v. Sokolowski*, 2006 WI 103, ¶40, 294 Wis. 2d 274, 717 N.W.2d 781.

¶9      The Hansens argue the circuit court erred in granting the Kleins' summary judgment motion and dismissing them from the lawsuit.[5] The Hansens first claim there are material questions of fact as to whether a conspiracy existed as alleged, thereby requiring a trial and preventing summary judgment. They further contend that the court improperly relied upon *North Highland, Inc. v. Jefferson Machine & Tool Inc.*, 2017 WI 75, 377 Wis. 2d 496, 898 N.W.2d 741, and *Maleki v. Fine-Lando Clinic Chartered, S.C.*, 162 Wis. 2d 73, 469 N.W.2d 629 (1991), in articulating the Hansens' burdens of production and persuasion for their civil conspiracy claim.

---

[4] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[5] The Kleins filed a motion for summary judgment, and the circuit court granted the motion and ordered dismissal of "all claims against" them with prejudice. Lisa, represented by separate counsel, still remains in the suit. We note that while Lisa (as well as Mark, now deceased) is noted in the caption as one of the "defendants-respondents," she was not a respondent to this appeal.

¶10 Addressing the latter issue first, *North Highland* and *Maleki* held that to prevail on a civil conspiracy claim, "a plaintiff 'must show more than a mere suspicion or conjecture that there was a conspiracy or that there was evidence of the elements of a conspiracy.'" *North Highland*, 377 Wis. 2d 496, ¶23 (quoting *Maleki*, 162 Wis. 2d at 84). *North Highland* also held, as a variation on this notion, that "[i]f circumstantial evidence supports equal inferences of lawful or unlawful action, then the conspiracy is not proven and the case should not be submitted to the jury." *Id.*

¶11 The Hansens contend that *North Highland* and *Maleki* are inapposite for two reasons. First, they argue that *North Highland* involved a claim of a conspiracy to breach a fiduciary duty, unlike the fraud-based claims in this case. Second, *Maleki* was decided based upon a review of a jury's verdict, not on summary judgment. According to the Hansens, the nature of the alleged civil conspiracy here and the posture of summary judgment require that they only show whether competing inferences can be drawn from the facts, and if so, the case must be submitted to the jury. *See Coopman v. State Farm Fire & Cas. Co.*, 179 Wis. 2d 548, 559, 508 N.W.2d 610 (Ct. App. 1993).

¶12 We disagree. First, we can easily dispose of the Hansens' contention that *Maleki* is of no import here because it involved postverdict submissions rather than a motion for summary judgment. The Hansens fail to develop any argument as to why that distinction matters for purposes of our review, other than to reference their general argument, which we reject below, that questions of material fact preclude summary judgment. We will not abandon our neutrality to develop arguments for a party. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82.

¶13    Second, *North Highland*, which involved a review of a grant of summary judgment, provides that to submit a conspiracy claim to trial, there "must be [both] a quantum of evidence that the trial judge can conclude leads to a reasonable inference of conspiracy" and "specific evidentiary facts that are admissible in evidence."  *North Highland*, 377 Wis. 2d 496, ¶¶23, 26 (citations omitted).  Nothing in that case suggests the court's holding was limited by the nature of the underlying claim—i.e., the breach of a fiduciary duty.  Rather, the holding in *North Highland* creates a heighted burden for all conspiracies.

¶14    The Hansens reach their contrary conclusion by misreading a single sentence in *North Highland* which states: "[A] claim for conspiracy to breach a fiduciary duty requires a more stringent test than whether a reasonable inference may be drawn from the facts."  *Id.*, ¶23 (citation omitted).  Based on that sentence, they summarily contend that the "more stringent test" to which the court referred was derived not from the fact that the claim in *North Highland* involved a conspiracy, but rather from the fact that the claim specifically involved a conspiracy to breach a fiduciary duty.  But the Hansens are clearly wrong in this regard because the *North Highland* court cited *Maleki* immediately after this sentence in support of the stated proposition, and *Maleki* itself did not involve a breach of fiduciary duty but, rather, a civil conspiracy claim of unlawfully injuring a business contrary to WIS. STAT. § 134.01.  *See Maleki*, 162 Wis. 2d at 77.  Indeed, the *Maleki* court stated, including language cited by *North Highland*:

> While inferences reasonably drawn are appropriate bases for unassailable findings of fact in most cases, and the acceptance of one inference rather than another by the jury is generally a sufficient finding of fact (*see St. Paul Fire & Marine Ins. Co. v. Burchard*, 25 Wis. 2d 288, 130 N.W.2d 866 (1964), and Currie & Heffernan, Wisconsin Appellate Practice and Procedure, pp. 36-7, 1975 Wis. Bar ATS), Wisconsin law in respect to conspiracies imposes a more stringent test.  To prove a conspiracy, a plaintiff must show

more than a mere suspicion or conjecture that there was a conspiracy or that there was evidence of the elements of a conspiracy. The United States Court of Appeals for the Seventh Circuit, relying on Wisconsin cases, recently stated:

In Wisconsin, if circumstantial evidence supports equal inferences of lawful action and unlawful action, then the claim of conspiracy [under sec. 134.01, Stats.] is not proven. *See Scheit v. Duffy*, 248 Wis. 174, 176, 21 N.W.2d 257 (1946).

*Maleki*, 162 Wis. 2d at 84-85 (quoting *Allen & O'Hara, Inc. v. Barrett Wrecking, Inc.*, 898 F.2d 512, 516 (7th Cir. 1990); alteration in *Maleki*). Nowhere else in their briefs do the Hansens attempt to explain why we should apply the rule articulated in *North Highland* only to conspiracy claims involving breaches of fiduciary duties, and not , as here, to claims sounding in fraud.

¶15 Thus, the circuit court properly concluded that absent something more than circumstantial evidence supporting equal inferences as to whether the elements of a civil conspiracy claim were met, the Hansens' conspiracy claim failed as a matter of law.

¶16 With the relevant legal standard confirmed, we turn to the evidence in the summary judgment record, viewing it, as we must, in the light most favorable to the Hansens, the nonmoving parties. The Hansens principally argue that the circuit court erred in finding that the majority of the facts they provided in their affidavits in opposition to the summary judgment motion were inadmissible hearsay, lacking in foundation, speculative, and otherwise insufficient to show that a civil conspiracy existed. Again, we disagree.

¶17 A civil conspiracy claim has three elements: (1) the existence and operation of a conspiracy; (2) wrongful acts done pursuant to the conspiracy; and (3) damage resulting from those acts. *North Highland*, 377 Wis. 2d 496, ¶25. To

8

prove a conspiracy, the Kleins must have had some awareness that Mark and Lisa were breaching their duty to disclose the scare guns as a nuisance, and, further, they must have agreed to help Mark or Lisa conceal that information. None of the evidence the Hansens rely upon, however, is anything more than circumstantial and speculative evidence that a conspiracy existed.

¶18     Here, the Hansens assert that because Mark was a relative, worked with the Kleins in the past, and he was allegedly seen working on the Kleins' property after the sale and hunting on Kleins' land, there must have been communication regarding Mark and Lisa's allegedly fraudulent schemes. A similar, entirely speculative argument was raised and rejected in *North Highland.* In that case, Trewyn, a current employee of North Highland, formed a manufacturing company named Jefferson Machine with a man named Wells. *North Highland*, 377 Wis. 2d 496, ¶¶6-7. The underlying dispute arose when both North Highland and Jefferson Machine submitted confidential bids on a project. *Id.*, ¶8. North Highland alleged that while Trewyn was employed at North Highland, he formulated confidential bids for both North Highland and Jefferson Machine. *Id.* North Highland suggested that because Trewyn and Wells had a working relationship at Jefferson Machine, they must have discussed the bidding formulations and conspired together to breach a fiduciary duty to the claimant. *Id.*, ¶¶29-32. Our supreme court disagreed, concluding that although an inference may be drawn that Trewyn shared knowledge with Wells, unrebutted deposition testimony supported the opposite conclusion. *Id.*, ¶30. There was no direct evidence to support the formation and operation of a conspiracy. *Id.*

¶19     We, like the circuit court, easily reject the theory that merely because most of the alleged co-conspirators were brothers and Mark occasionally worked on the farm and hunted on the Kleins' land, a conspiracy existed. Even

assuming all of the Hansens' alleged facts are true, their claim still fails because those facts are insufficient to create a genuine issue of material fact on summary judgment under the applicable *North Highland* standard. Likewise, questions of fact regarding the nature of the family members' relationships during the relevant times are not material, even if those facts were construed in favor of the Hansens.[6]

¶20 The remainder of the evidence offered—i.e., the vague statements in the Hansens' opposition affidavits that the scare guns did not appear to operate as much, or at all, when the property was being shown—were properly disregarded by the circuit court as too vague and speculative. Likewise, the fact that Mark was angry over a neighbor, Pat Bork, contacting the realtor after allegedly hearing that an unknown prospective buyer had not been told about the scare guns when viewing the property was itself based upon inadmissible hearsay, given that the record is devoid of any sworn statements by Pat or, especially, the unknown prospective buyer. In any event, even if the Borks' statements in reference to the purported unknown buyer were admissible, they do not reasonably show, beyond a mere inference, that there was a conspiracy between Mark and Lisa and any of the Kleins in relation to usage of the scare guns during the property's pending sale to the Hansens.

¶21 The Hansens also reference a letter sent by Carlton to Pat Bork as supportive evidence. They contend that because the letter mentions the phone call

---

[6] In their reply, the Hansens take issue with the Kleins' allegation that they were estranged from Mark and Lisa, and they cite facts to show otherwise. As discussed above, however, even if Mark and Lisa were not estranged from the Kleins and communicated with them at times, their family relationship and occasional communication, harvesting and hunting on the Kleins' property are insufficient evidence to permit a fact finder to conclude, under the standard in *North Highland v. Jefferson Machine & Tool Inc.*, 2017 WI 75, 377 Wis. 2d 496, 898 N.W.2d 741, that a civil conspiracy existed so as to preclude summary judgment.

from Pat to the realtor, Mark and Lisa must have spoken to Carlton about the call, and the letter was an effort to persuade Pat to stop speaking to the Kleins' realtor. The letter, as the circuit court noted, appears to call Pat a liar, with the rest of its contents again appearing vague and irrelevant. This letter does not rise to the *North Highland* standard necessary to show a civil conspiracy. *See North Highland*, 377 Wis. 2d 496, ¶¶23, 26. In particular, it does not constitute direct evidence of either the Kleins' awareness that Mark and Lisa were breaching their duty to disclose the scare guns as a nuisance, or of their agreeing to help Mark or Lisa conceal that information. Additionally, it may have also been reasonable to infer that Carlton heard of this conversation from some other party.

¶22 Finally, the Hansens offered the affidavit of Catherine Tabor-Hansen as evidence of acts done in furtherance of the alleged conspiracy. Suffice it to say, that affidavit was also based wholly upon unsupported speculation in terms of facts necessary to meet the elements of a civil conspiracy.

¶23 We agree with the circuit court that there is no admissible evidence in the record directly supporting the existence or operation of a conspiracy, nor was there any evidence of actions taken pursuant to the conspiracy.[7] By way of comparison, in the affidavits of Wendell, Anna, and Carlton Klein in support of their summary judgment motion, each stated under oath that: (1) they did not communicate with Mark and Lisa about the sale of their property, and they first

---

[7] In their briefs, the Hansens reference not having the ability to conduct depositions before the Kleins filed their summary judgment motion due to the COVID-19 pandemic. The Hansens, however, did not seek leave of the circuit court before choosing to respond to the summary judgment motion solely upon affidavits. *See* WIS. STAT. § 802.08(4) (a court may refuse a motion for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken). Thus, they cannot now claim that the court erred by failing to allow them to conduct additional discovery.

11

learned of it when they saw the for sale sign in Mark and Lisa's yard; (2) they did not know when the house was being viewed; (3) they never discussed with Mark or Lisa the non-use of scare guns during any viewings; and (4) they did not know when the house was rented or sold.

¶24      In sum, the vague and speculative affidavits filed in opposition to the Kleins' motion for summary judgment did not raise genuine issues of material fact on the elements of civil conspiracy sufficient to defeat the Kleins' prima facie showing.   Again, the applicable, heightened legal standard for a conspiracy claimant's burden of production and persuasion is dispositive here.[8]   As discussed above, the Hansens "must show more than a mere suspicion or conjecture that there was a conspiracy or that there was evidence of the elements of a conspiracy." *North Highland*, 377 Wis. 2d 496, ¶23 (quoting *Maleki*, 162 Wis. 2d at 84).   At best, there are equal inferences supporting the existence and nonexistence of a conspiracy, and under *North Highland*, we must therefore conclude that the Hansens' proof was insufficient to raise material questions of fact warranting trial. Accordingly, the circuit court properly granted summary judgment.

> *By the Court.*—Judgment affirmed.

This opinion will not be published.   *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[8] Indeed, it appears the Hansens appreciate the difficulty of their argument under the more stringent standard, as they ignore *North Highland* and *Maleki v. Fine-Lando Clinic Chartered, S.C.*, 162 Wis. 2d 73, 469 N.W.2d 629 (1991), entirely in their reply brief, and instead suggest that to withstand summary judgment, it was sufficient for them to show the existence of competing inferences as to whether the elements of a conspiracy claim were met.